UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ROY YOUNG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 5:18-cv-507-LCB** |
| | ) |
| **HYOSUNG USA, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendant Hyosung USA, Inc.'s (Hyosung) Motion for Summary Judgment against Plaintiff Roy Young's discrimination allegations. (Doc. 49). Plaintiff also filed a motion for summary judgment in support of his allegations. (Doc. 51). In response to Plaintiff's motion and evidentiary exhibits, Defendant filed three motions to strike. (Docs. 54, 57, 65). For the reasons stated below, Defendant's motions to strike are granted in part and denied in part. Defendant's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

**I.    Motions to Strike (Docs. 54, 57, 65)**

Defendant moves to strike several documents Plaintiff has submitted in opposition to summary judgment. Defendant argues that the following materials should be stricken: Plaintiff's briefings; portions of Plaintiff's affidavit; and

1

Plaintiff's evidentiary attachments.[1] The Court will address each of these contentions in turn.

Courts will construe "a party's motion to strike certain evidence as an objection to that evidence's admissibility." *Taylor v. City of Gadsden*, 958 F. Supp. 2d 1287, 1291 (N.D. Ala. 2013), *aff'd*, 767 F.3d 1124 (11th Cir. 2014). Federal Rule of Civil Procedure 56(c)(2) allows a party to object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Evidence that is otherwise admissible can be submitted in inadmissible form at summary judgment. *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996).

Defendant moves to strike portions of Plaintiff's affidavit because it is a sham affidavit. (*See* Doc. 54 at 3). A party cannot "give[] clear answers to unambiguous questions which negate the existence of any genuine issue of material fact" then later "create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc., v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). A so-called "sham affidavit" is not permissible. *Id*. Defendant asserts that portions of Plaintiff's affidavit contradict his testimony during his deposition. (Doc. 54 at 3). Particularly, Defendant notes that

---

[1] While Defendant filed three motions to strike, many of Defendant's issues are in all the motions. As such, the Court will discuss each issue discretely, not each motion.

paragraphs 8, 10, and 11 of Plaintiff's affidavit should be stricken as it directly contradicts his deposition testimony. (*Id*.). Plaintiff contends that his affidavit is consistent with his remarks during the deposition. (Doc. 61 at 3–7).

During his deposition, Plaintiff testified that he did not ask supervisor Mark Waldron about a position in the warehouse in January 2016. (Doc. 54 at 4). However, in the affidavit Plaintiff submitted, he stated that he asked for the warehouse job. (*Id*.). Plaintiff's statement in his affidavit clearly opposes his previous testimony. Accordingly, paragraph 8 of Plaintiff's affidavit is stricken.

In paragraph 10 of Plaintiff's affidavit, he stated that he told one of the supervisors that the way the company was distributing jobs was racist. (*Id*. at 5). Plaintiff testified in his deposition that he did not mention the hiring process was racist in his grievance. (*Id*. at 5). While the two statements apparently contradict each other, Plaintiff seemingly is describing a personal interaction with his supervisor, not filing a grievance. Therefore, this section of Plaintiff's affidavit will not be stricken.

Finally, Plaintiff testified in paragraph 11 of his affidavit that he filed two grievances on February 1, 2016, and April 10, 2016. (*Id*.). He testified in his deposition that there were no other grievances than the ones he filed in 2013 and February 2016. (*Id*.). This statement clearly contradicts his earlier testimony about

how many grievances he filed. Further, Plaintiff has produced no evidence of another grievance. Accordingly, this statement is stricken.

Defendant also moves to strike different elements of Plaintiff's briefing and evidentiary attachments for a variety of reasons. Particularly, Defendant moves to strike: Plaintiff's briefs[2] because they do conform to the Court's initial order and violate Federal Rule of Civil Procedure Rule 56; portions of Plaintiff's affidavit because they are irrelevant and/or immaterial; and Plaintiff's evidentiary attachments generally because they lack foundation and relevance. (*See* Doc. 54).

On February 14, 2020, the Court entered an order extending the deadlines for Plaintiff's responses to Defendant's motions. (Doc. 58). Plaintiff's response to Defendant's motion for summary judgment was due by February 28, 2020. (*Id*. at 1). While Plaintiff's former response to Defendant's motion was untimely, (Doc. 56), Plaintiff's amended response, (Doc. 62), was filed according to the Court's new deadline. As such, Defendant's motions to strike Plaintiff's response to its motion to dismiss is denied as moot.

As the Court explains below, Plaintiff's § 1981 claim cannot succeed because it is barred by the statute of limitations. *See infra* Part IV. Defendant moves to strike Plaintiff's motion for summary judgment because it is out of compliance with the Court's initial order and Federal Rule of Civil Procedure 56. (Doc. 54 at 1–2).

---

[2] Defendant moves to strike Docs. 51, 56, 62.

However, this argument is moot because even if the Court allowed the brief, the Plaintiff would still not be entitled to relief. Additionally, Defendant's quibbles with the relevance of portions of Plaintiff's affidavits and the foundation of his evidentiary attachments are unnecessary to the resolution of this motion. Therefore, Defendant's motions to strike based on the relevance of Plaintiff's affidavit and foundation of the evidentiary attachments are denied as moot.

Accordingly, paragraphs eight and eleven of Plaintiff's affidavit are stricken and the corresponding sections of Defendant's motions are granted. The remaining paragraphs of Plaintiff's affidavit and evidentiary attachments are not stricken, and the corresponding sections of Defendant's motions are denied as moot. Finally, Plaintiff's motion for summary judgment and response to its motion for summary judgment are not stricken and the corresponding sections of Defendant's motions are denied as moot.

**II.     Defendant's Motion for Summary Judgment (Doc. 49)**

**A. Factual Background**

Plaintiff Roy Young is an African American male. (Doc. 1 at 2). He began working at Goodyear Tire Company in 1980 and generally performed cable work. (Doc. 52-1 at 21:22-22:1). In 2007, Defendant Hyosung purchased the Goodyear plant. (*Id*. at 28:9-11). Plaintiff was hired as a cable threader and served as a section coordinator. (*Id*. at 30:16-22). Defendant condensed two of its production mills in

early 2016, Mills 1 and 2. (*Id*. at 51:9-13). Instead of conducting a formal hiring process to fill positions, Defendant canvassed employees to stock positions. (*Id*. at 53:6-12). Mark Walden, Plaintiff's area manager, conducted the canvass and asked different employees what jobs they wanted. (*Id*. at 53:10-12; 54:12-17). Per the collective bargaining agreement (CBA), employees were canvassed according to seniority. (*Id*. at 88:4-12). During the canvass, Plaintiff wanted to be chosen for the mechanical, electrical technician – cable corder – ring twisting position (MET) or the weaving technician position. (*Id*. at 57:4-11). He talked to Mark Walden, his area manager, and told him that he wanted these respective positions. (*Id*. at 120:9-18). Walden told Plaintiff that he was not qualified for these jobs. (*Id*.). Because of Plaintiff's knowledge and informal training that he received throughout his years on the job, he believed that he was qualified. (*See id*. at 68:6-9). Plaintiff was canvassed for the ring twister (RT) machine operator job and received it the same day. (*Id*. at 82:10-14). The MET and weaving technician jobs were filled by other black and white employees. (*See* Doc. 52-3 at 3; Doc. 52-5 at 6).

Even though Plaintiff was awarded a new position, he believed that he was not allowed to progress at the company. (Doc. 52-1 at 183:20-184:5). For example, he previously applied for a position as a clerk in the warehouse's supply room in 2013. (*Id*. at 136:5-8). Again, he was told that he was unqualified for this position because he had not taken a test required for the position. (*Id*. at 138:1-11). In

February 2016, Plaintiff filed a grievance that he was unfairly not awarded the weaving technician position and the job was not posted in accordance with the CBA. (*See* Doc. 52-2 at 4). Plaintiff also filed an EEO complaint that provided he was discriminated against during the canvassing process. (Doc. 52-2 at 5). The EEO charge was ultimately dismissed because it was untimely. (Doc. 52-1 at 161:4-12). Plaintiff filed a complaint against Defendant on March 30, 2018. (Doc. 1). He claimed that he was unfairly promoted/demoted because of his race in violation of 42 U.S.C. § 1981. (*Id*. at 5). He argues that because he was not promoted, he was placed in lower paid position than his job before the canvass. (*Id*. at 6). Plaintiff was originally represented by counsel but now proceeds *pro se*. Defendant filed a motion for summary judgment on January 14, 2020. (Doc. 49).

### B. Legal Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.  Once

the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party

opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

### III. Discussion – Defendant's Motion for Summary Judgment (Doc. 49)

Defendant argues that Plaintiff's claim fails as a matter of law for several reasons. Defendant asserts that Plaintiff's claim is barred because of § 1981's statute of limitations. (Doc. 50 at 15). Defendant also claims that even if the claim is not barred by the statute of limitations, Plaintiff cannot establish a *prima facie* racial discrimination case. (*Id.* at 17). Further, it had a legitimate, non-discriminatory reason for not canvassing Plaintiff for the positions he wanted. (*Id.* at 18). Finally, Defendant argues Plaintiff cannot demonstrate that its actions were motivated by discriminatory pretext. (*Id.* at 24).

#### A. Statute of Limitations

#### 1. Claims recognized under § 1981

"Racial discrimination in the making and enforcement of private contracts" is prohibited under 42 U.S.C. § 1981. *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). This statute was originally enacted as a part of the Civil Rights Act of 1866. *Id.* Before subsequent amendments in the 1990s, a failure to promote claim brought under § 1981 was limited to a narrow set of circumstances. In *Patterson v. McLean Credit Union*, the United States Supreme Court held that whether a failure to

promote claim was cognizable depended on the nature of the employment relationship. 491 U.S. 164, 185–86 (1989), *superseded by statute as recognized in CBOCS West*, *Inc v. Humphries*, 553 U.S. 442 (2008). The Court determined "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim recognizable under § 1981." *Id*. at 185.

After *Patterson* was decided, Congress enacted the Civil Rights Act of 1991, effectively overturning this decision. *See Brown v. Huntsville City Bd. of Educ.*, 324 F.R.D. 239, 254 (N.D. Ala. 2018). This act amended § 1981 and made all failure to promote claims actionable, not only ones where a "new and distinct relation" was created. *Goodgame v. Am. Cast Iron Pipe Co.*, 75 F.3d 1516, 1518 (11th Cir. 1996).

### 2. Applying the Statute of Limitations to § 1981 Claims

There is no explicit statute of limitations in § 1981. *See Brown*, 324 F.R.D. at 252. Before the amendment in 1991, courts calculating the statute of limitations under § 1981 were directed to select "the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987), *superseded by statute as recognized in*, *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). In Alabama, the most analogous law to § 1981 is the state's two-year personal injury statute of limitations. *See Price v. M & H Valve Co.*, 177 F. App'x. 1, 10 (11th Cir. 2006). *See also* Ala. Code § 6-2-38.

The statute of limitations for civil causes of action brought under federal statutes was altered by Congress in 1990. *See Brown*, 324 F.R.D. at 253. With the passage of 28 U.S.C. § 1658, any civil actions that arose under an Act of Congress "may not be commenced later than 4 years after the cause of action accrues." While this new four-year period seemingly applies to all claims brought under § 1981, this is not the case in all situations. The Supreme Court clarified its application in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The Court held the four-year statute of limitations under § 1658 applied to claims "made possible by a post-1990 enactment." *Jones*, 541 U.S. at 382. *See also Price*, 177 F. App'x. at 7. ("[T]o the extent that the Civil Rights Act of 1991 created new causes of action not previously cognizable under § 1981, such claims are subject to the four-year "catch-all" statute of limitations of § 1658.")

However, if a party *could* bring his § 1981 claim prior to the 1991 amendment (i.e. there was a "new and distinct" employment relationship formed as defined in *Patterson*), it was subject to the original state specific statute of limitations. *See Price*, 177 F. App'x. at 10 (holding that Plaintiff's claim was cognizable under *Patterson*, so Alabama's two-year statute of limitations applied.") Stated plainly, Plaintiff's claim that Defendant did not promote him for discriminatory reasons is subject to this state's statute of limitations if the promotion would create a "new and

distinct relation between the employer and the employee." *Id*. If it does not, the statute of limitations is four years, pursuant to § 1658.

Determining whether a "new and distinct" relationship was formed between an employer and employee is a fact-specific analysis. *See DeBailey v. Lynch-Davidson Motors, Inc.*, 734 F. Supp. 974, 977 (M.D. Fla. 1990). Some of the factors the Court can consider when evaluating this relationship include "pay, duties, responsibilities…[and] required qualifications." *Id*. However, a new position with higher pay does "not transform a promotion into a new and distinct relation." *Id*. (citing *Brown v. Am. Food Serv. Corp.*, 1990 WL 10021 (E.D. Penn. Feb. 6, 1990)).[3]

Plaintiff contends he was entitled to a promotion in the MET or weaving technician positions. Before the two mills were consolidated, Plaintiff worked as a section coordinator for cable threading. (Doc. 52-1 at 30:6-12). Once the consolidation occurred, Plaintiff was awarded the ring twister (RT) position. (*Id*. at 82). In his previous position, Plaintiff's duties included doffing frames. (*Id*. at 23:16-21; 24:3-7). The position descriptions of the MET and weaving technician positions diverge from Plaintiff's previous responsibilities. For example, the MET position requires "preventative and emergency maintenance with electrical responsibilities;

---

[3] Plaintiff also asserts claims about not receiving the supply clerk position. However, Plaintiff admits that this job was not open in 2016. (Doc. 62 at 30). The undisputed facts provide the position was last available in 2013. (Doc. 52-1 at 136:5-8). As such, this claim falls outside of the two- and four-year statute of limitations.

utility work; sewing machine; [and] assist weaving maintenance when necessary." (Doc. 52-2 at 2). Further, the weaving technician position requires "preventative and emergency maintenance; utility work; sewing machine – air splicer repair; relieve weaver during breaks and as needed; [and] assist twisting maintenance when necessary." (*Id*.). These positions also necessitated employees have extra qualifications to be eligible for them. The MET position required employees to have electrical training that was given to some cable corder technicians. (Doc. 52-3 at 5). Additionally, the weaving technician position required employees to be qualified loom/air jet technicians. (Doc. 52-4 at 8).

Accordingly, construing the facts in the most favorable light to Plaintiff, his potential promotion to any of these positions would have created a "new and distinct relation" between he and his employer. *Patterson*, 491 U.S. at 185–86. The nature of each job's duties, responsibilities, and required qualifications support that a promotion would create a new employment relationship between Plaintiff and Defendant. *See DeBailey*, 734 F. Supp. at 977. As such, Plaintiff's claims are subject to a two-year statute of limitations under Alabama law. Because he brought his failure to promote claims after time expired,[4] they are barred.

---

[4] Plaintiff was not promoted to a new position after the canvass occurred in January 2016. (*See* Doc. 52-1 at 96). Plaintiff did not file this lawsuit until March 30, 2018. (*See* Doc. 1).

Plaintiff argues that a genuine issue of material fact over when he received notice that he was not promoted. (Doc. 62 at 15). However, this contention is undermined by undisputed evidence in the record. Plaintiff filed a grievance on February 1, 2016 complaining that the weaving mechanic job should have been given to a senior employee. (Doc. 52-4 at 64). He also testified that he received the RT machine operator position and the job canvassing concluded in January 2016. As such, Plaintiff cannot create a genuine dispute of material fact about this issue.

Regardless, even if the two-year statute of limitations did not apply to Plaintiff's claim, his allegations could not survive summary judgment. Without direct evidence,[5] a party's discrimination case based on circumstantial evidence is subject to the *McDonnell Douglas* burden shifting framework. *Vessels v. Atl. Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this test, once a plaintiff has established a *prima facie* discrimination case, the burden shifts to the defendant to give a legitimate, non-discriminatory reason for its employment decision. *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (citing *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)). Finally, if the defendant can produce a legitimate reason for its actions, the plaintiff then "must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id.*

---

[5] Plaintiff has not produced any direct evidence of racial discrimination.

Even if Plaintiff could demonstrate there was a *prima facie* discrimination case, he could not overcome Defendant's legitimate, non-discriminatory reasons for his not receiving the MET or weaving technician positions. Defendant's burden to present a legitimate reason for its action is "exceedingly light." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994) (citing *Meeks v. Comp. Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)). Both positions that Plaintiff desired required him to have additional qualifications besides the ones he possessed. (*See* Doc. 52-3 at 5; Doc. 52-5 at 4). Plaintiff maintains he was qualified for these jobs because of years with Defendant and its predecessor. However, he admits he did not receive the official training that was required to be considered qualified. (Doc. 52-1 at 59:16-19; 78:6-8). The employees that were canvassed and hired for these positions had the necessary qualifications. (*See* 52-3 at 5; 52-5 at 6). Accordingly, Defendant has presented a legitimate, non-discriminatory reason for not canvassing Plaintiff for the weaving technician or MET positions.[6]

Finally, a reasonable factfinder could not conclude Plaintiff demonstrated that Defendant's canvassing decisions were pretext for illegal discrimination. To show a defendant's reason was pretext for unlawful activity, a plaintiff must show "such

---

[6] Even if Plaintiff's complaint about the supply room job was not untimely, the undisputed evidence shows Plaintiff was not qualified for this position as he did not take the required Work Keys test. (Doc. 52-1 at 126:23-127:1). Despite Plaintiff's belief that the former occupant of the position did not have to take the test, Defendant offered evidence to show that the supply room clerk had taken the required test. (*See* Doc. 52-3 at 21).

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). *See also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarrelling with the wisdom of that reason.")

Plaintiff contends that Defendant's reasoning is pretextual because it did not follow the procedures of the Collective Bargaining Agreement (CBA). (Doc. 62 at 30). Specifically, he argues that the CBA provides that non-craft jobs should be filled according to seniority "if the candidate was physically and mentally capable of performing the job." (*Id.* at 30). Defendant's contentions are not supported by undisputed evidence in the record. Indeed, Section 4 of the CBA provides that many positions will be first filled in order of seniority. (*See* Doc. 52-4 at 19). However, the language in subsection (14)(2)(a) of the agreement reads that "[t]he job will be awarded to the employee with the greatest seniority, provided the employee meets the physical and mental job qualifications." (*Id.*). The CBA does not discuss an employee's capabilities, but rather his *qualifications*. Additionally, the agreement also provides that craft type jobs Plaintiff was interested in (including the MET and

16

weaving technician positions) required employees to "satisfactorily meet the qualifications necessary to perform a particular job." (*Id*. at 20).

He also argues that he was not grandfathered in to the MET position as a qualified overhauler pursuant to an agreement executed by Goodyear in 2003. (Doc. 52-2 at 15). However, his qualification records do not provide that he was considered a qualified overhauler. (Doc. 52-2 at 132–33). While Plaintiff argues that these records are not accurate, (Doc. 52-1 at 168:17-21), he has not produced evidence showing that he was classified as a qualified overhauler.

Plaintiff has not introduced evidence that undermines Defendant's reasoning, nor has he shown evidence that any of the white employees who were canvassed for these positions were unqualified. While Plaintiff may disagree with the way the canvassing process was conducted, this disagreement does not create "weaknesses, implausibilities, [or] inconsistencies" in Defendant's explanation for Plaintiff's job placement. *Alvarez*, 610 F.3d at 1265. Accordingly, there is no genuine dispute of material fact about Plaintiff's failure to promote/demotion claim under § 1981. Therefore, Defendant's motion is due to be granted.

## IV.   DISCUSSION – Plaintiff's Motion for Summary Judgment (Doc. 51)

Plaintiff also moves for summary judgment on his discrimination claims. (Doc. 51). He argues that no genuine dispute of material fact exists that he was the target of illegal discrimination. (*See id*.). When considering cross motions for

summary judgment, the summary judgment standard does not change. *Hawaiian Airlines, Inc. v. AAR Aircraft Serv., Inc.*, 167 F. Supp. 3d 1311, 1317 (S.D. Fla. 2016) (citing *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 761 F. Supp. 2d 1337, 1341 (M.D. Fla. 2010)). A "[c]ross-motion[] for summary judgment will not, in [itself], warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on fact that are not genuinely disputed…" *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citing *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). As discussed above, Plaintiff's discrimination claims are barred as a matter of law because of § 1981's statute of limitations. *See supra* Part IV. Plaintiff's motion for summary judgment does not address why his claims are not time barred nor does it demonstrate why those facts can be conclusively decided in his favor. Accordingly, Plaintiff's motion for summary judgment (Doc. 51) is due to be denied.

## V. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (Doc. 49) is **GRANTED,** and Plaintiff's motion for summary judgment (Doc. 51) is **DENIED.** An order consistent with the opinion will be entered separately.

**DONE** and **ORDERED** this September 22, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE